# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

**James E. Marina (N.J. Bar No. 050791996)**
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

| | |
|---|---|
| GENERAL MOTORS LLC, GENERAL MOTORS COMPANY,<br><br>    Plaintiffs,<br><br>  against<br><br>JOSEPH ASHTON,<br><br>    Defendant. | CASE NO. 20-12659<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO ASHTON'S MOTION TO DISMISS |

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ....................................................................................................................1

I.   MICHIGAN LAW LIKELY APPLIES TO THE BREACH OF
     FIDUCIARY DUTY CLAIM. ............................................................................1

II.  GM'S BREACH OF FIDUCIARY DUTY CLAIM IS NOT BARRED
     BECAUSE ASHTON'S FRAUDULENT CONCEALMENT
     TOLLED THE STATUTE OF LIMITATIONS. ..............................................4

     A.   GM Did Not Discover Its Breach of Fiduciary Duty Claim
          Until 2019 at the Earliest. ........................................................................5

     B.   The 1AC Alleges Diligence by GM. ........................................................9

     C.   The Complaint Alleges Acts of Concealment by Ashton. ...................12

CONCLUSION ...............................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bd. of Educ. of the Township of Cherry Hill, Camden Cnty. v. Human Res. Microsystems, Inc.*,
   Civ. No. 09-5766 (JBS/JS), 2010 WL 3882498 (D.N.J. Sept. 28, 2010) ................................................................................................................. 7

*Best v. Park W. Galleries, Inc.*,
   2013 WL 4766678 (Mich. App. Sept. 5, 2013) ..................................................... 11

*Brownell v. Garber*,
   199 Mich. App. 519 (1993) ................................................................................... 14

*Carrier Corp. v. Outokumpu Oyj*,
   673 F.3d 430 (6th Cir. 2012) ............................................................................. 9, 12

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
   264 Mich. App. 632 (2004) ................................................................................. 8, 9

*Gomba Music, Inc. v. Avant*,
   62 F. Supp. 3d 632 (E.D. Mich. 2014) .................................................................... 4

*Harper v. LG Elecs. USA, Inc.*,
   595 F. Supp. 2d 486 (D.N.J. 2009) .......................................................................... 1

*Int'l Union United Auto. Workers of Am. v. Wood*,
   337 Mich. 8 (1953) ............................................................................................ 5, 15

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   Civ. Action No.: 16-md-2687 (JLL), 2017 WL 3131977 (D.N.J. July 20, 2017) ........................................................................................................ 12

*Lumber Vill., Inc. v. Siegler*,
   135 Mich. App. 685 (1984) ................................................................................... 14

*In re MacGregor Sporting Goods, Inc.*,
   199 B.R. 502 (Bankr. D.N.J. 1995) ................................................................ 5, 6, 9

*McCarrell v. Hoffmann-La Roche, Inc.*,
  227 N.J. 569 (2017) ..................................................................................2, 3

*N. Am. Comm'ns, Inc. v. InfoPrint Sols. Co., LLC*,
  817 F. Supp. 2d 642 (W.D. Pa. 2011)...................................................................9

*Partners of Mass., LLC v. Fantasia*,
  Civ. Action No. 15-7960, 2019 WL 522107 (D.N.J. Feb. 11, 2019)...................3

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) .................................................................................5

*Riddell v. Riddell Washington Corp.*,
  866 F.2d 1480 (D.C. Cir. 1989)..........................................................................15

*Rycoline Prods., Inc. v. C & W Unlimited*,
  109 F.3d 883 (3d Cir. 1997) .............................................................................5, 7

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ..............................................................................15

*Snyder v. Farnam Cos., Inc.*,
  792 F. Supp. 2d 712 (D.N.J. 2011)......................................................................2

**Statutes**

Mich. Civ. Law § 600.5855 .......................................................................................4

Pursuant to the Court's June 22, 2021 Order (Dkt. No. 35), Plaintiffs submit this Supplemental Brief on "(1) which forum's substantive law applies to the breach of fiduciary duty claim; (2) whether the claim is barred by the statute of limitations; and (3) whether the statute of limitations should be tolled." (*Id*. at 21.)  For the reasons explained below, (1) Michigan law likely applies (though the Court need not decide that conflict at this juncture), (2) the claim is not barred by the statute of limitations, and (3) the statute of limitations should be tolled because the First Amended Complaint (Dkt. No. 7, ("1AC")) demonstrates that GM's breach of fiduciary duty claim against Ashton was fraudulently concealed and under Michigan law, a claim that is fraudulently concealed is not barred until two years after the plaintiff discovers or should have discovered the claim.  Here, the 1AC contains more than sufficient allegations of fraudulent concealment to defeat the relatively lax standard at the Motion to Dismiss stage.  As alleged in the 1AC, GM did not discover, and could not have discovered with reasonable diligence, its breach of fiduciary duty claim against Ashton until 2019, when the government unsealed its indictment against Michael Grimes.  (1AC at ¶ 102.)

## ARGUMENT

### I. MICHIGAN LAW LIKELY APPLIES TO THE BREACH OF FIDUCIARY DUTY CLAIM.

This court applies New Jersey's choice of law principles.  *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 489 (D.N.J. 2009) ("New Jersey is the 'forum state'

for the instant litigation, and the Court 'must apply the law of the forum state, including its choice of law rules.'") (citations omitted).  Under New Jersey law, in deciding a choice of law dispute, the first step is to determine whether there is an actual conflict; where no actual conflict exists, the court need not engage in further analysis.  *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) ("The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies."); *see also, McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 584 (2017) ("When application of the forum state's or another state's statute of limitations results in the same outcome, no conflict exists, and the law of the forum state governs.") (citation omitted).  Ashton does not contest that these claims are timely under New Jersey's six-year statute of limitations.  (*See* Dkt. No. 21 at 19-30 (arguing exclusively under Michigan law and failing to address New Jersey law).)  And as explained in GM's Response and in this Supplemental Brief, GM's claims for breach of fiduciary duty are also timely under Michigan law.  Because there is no difference in the outcome between the two laws, there is no actual conflict and the Court need not engage in further analysis.

To the extent the Court elects to engage in a choice of law analysis, based on the information presently known, GM believes that Michigan law likely applies to the breach of fiduciary duty claim, pending further development of facts through discovery.  *Snyder*, 792 F. Supp. 2d at 718 (noting that given "factual inquiry that

may be necessary to properly weigh the Restatement factors" in deciding a choice of law question, it can be inappropriate in certain cases to decide choice of law questions on a motion to dismiss).

New Jersey follows section 142 of the Restatement (Second) of Conflicts of Laws. Generally speaking, New Jersey courts apply the New Jersey statute of limitations permitting a claim to go forward unless "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." *Partners of Mass., LLC v. Fantasia*, Civ. Action No. 15-7960, 2019 WL 522107, at *6-7 (D.N.J. Feb. 11, 2019). Here, based on the facts known to GM at this time, Michigan likely has a more significant relationship to the case than New Jersey. GM's corporate headquarters is in Michigan, and the majority of the collective bargaining negotiations underlying GM's breach of fiduciary duty claim took place in Michigan. *McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 586, (2017) ("We concluded that, despite the fact New Jersey was the forum state, North Carolina's statute of limitations should apply because that was where all the parties were located, where the cause of action arose, and where all relevant incidents occurred.").

That said, a number of crucial events underlying the case may have occurred in other jurisdictions—for example, where Ashton turned over GM's confidential information to FCA; where Ashton and FCA discussed and established the ongoing

3

bribery scheme; and where Ashton was when he developed and implemented his various CHR-related schemes. These answers, which GM is not in a position to know absent discovery, could impact the analysis of whether Michigan, New Jersey, or some other state has the most significant relationship to the claims at issue. Nonetheless, even if Michigan does have a more significant relationship to the parties and the occurrences giving rise to GM's breach of fiduciary duty claim, because application of New Jersey's or Michigan's statute of limitations results in the same outcome (GM's breach of fiduciary duty claim is timely), no conflict exists.

**II.     GM'S BREACH OF FIDUCIARY DUTY CLAIM IS NOT BARRED BECAUSE ASHTON'S FRAUDULENT CONCEALMENT TOLLED THE STATUTE OF LIMITATIONS.**

GM's breach of fiduciary duty claim is timely under Michigan law. As Ashton recognizes, under Michigan law, a fraudulently concealed claim may be brought within two years of the date the claim is or should have been discovered. Mich. Civ. Law § 600.5855. (Dkt. No. 21 at 19.) Due to the fraudulent concealment of Ashton and his co-conspirators, GM discovered its breach of fiduciary duty claim against Ashton in August of 2019 (1AC at ¶ 102) and filed this lawsuit on September 14, 2020. (Dkt. No. 1.) GM's breach of fiduciary claim is timely.

As an initial matter, GM's "burden at this stage in the proceedings [the motion to dismiss stage] is not great." *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 649 (E.D. Mich. 2014). As with any motion to dismiss, all of GM's factual allegations

related to its diligence and the discovery of its breach of fiduciary duty claim must be accepted as true and interpreted in the light most favorable to GM. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). And dismissal of a claim as barred by the statute of limitations is only appropriate where untimeliness is apparent on the face of the complaint. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (recognizing that with respect to a statute of limitations defense, if the "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)"). Further, the questions Ashton seeks to have decided—when GM discovered its claims and whether the 1AC contains sufficient allegations of concealment and diligence—are questions of fact, better decided at the summary judgment stage or at trial. *Int'l Union United Auto. Workers of Am. v. Wood*, 337 Mich. 8, 13 (1953) ("Questions of concealment and diligence are questions of fact."); *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 513-14 (Bankr. D.N.J. 1995) ("This determination [of when a plaintiff knew or should have known of its injury] cannot be made upon a motion to dismiss or a motion for summary judgment").

    **A.    GM Did Not Discover Its Breach of Fiduciary Duty Claim Until 2019 at the Earliest.**

The 1AC clearly describes how and when GM discovered its breach of fiduciary duty claim against Ashton: "It was not until the summer of 2019, with the indictment of Grimes, that GM first learned of the existence and scope of

5

wrongdoing at the CHR by Ashton." (1AC at ¶ 102.) Grimes' indictment, on August 14, 2019, was the first time that the CHR kickback and bribery scheme was disclosed. (*Id*. at ¶¶ 37-53.) The scheme was further described in subsequent indictments of Ashton and Jeffrey Pietrzyk. (*Id*.) The 1AC explains that despite GM's diligence in following the ongoing criminal investigations and the review of its own internal documents and materials (*see* Section II.B), it could not reasonably have discovered its breach of fiduciary duty claims against Ashton prior to Grimes' indictment.

Seeking to ignore these allegations in the 1AC, which must be accepted as true, Ashton asserts that GM discovered its claim, at the latest, in December 2017, when Ashton refused to give an interview to GM. (Dkt. No. 21 at 22.) Ashton bases this assertion solely on Ashton's refusal to consent to an interview concerning the government's investigation into the CHR and his resignation from the GM board, which he claims made GM aware of its breach of fiduciary duty claim. (*Id*.)

Ashton's argument improperly injects facts outside the 1AC at this stage in the proceeding. Contrary to Ashton's argument, nothing in the 1AC suggests at the time that GM sought an interview with Ashton, before the government had released any information detailing wrongdoing at the CHR, GM had reason to suspect that Ashton had defrauded GM. Ashton does not even attempt to provide an explanation

6

for how his refusal to consent to an interview related to a government investigation into the CHR put GM on notice of its claim for breach of fiduciary duty.

Ashton's attempts to layer additional facts into the 1AC highlights precisely why deciding fraudulent concealment at the motion to dismiss stage is often inappropriate. *Rycoline Prods., Inc.*, 109 F.3d at 886 (recognizing that with respect to a statute of limitations defense, if the "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)"); *Bd. of Educ. of the Township of Cherry Hill, Camden Cnty. v. Human Res. Microsystems, Inc.*, Civ. No. 09-5766 (JBS/JS), 2010 WL 3882498, at *4 (D.N.J. Sept. 28, 2010) ("The motion to dismiss will be denied as to this claim since it is not apparent from either the face of the Complaint or the evidence adduced by the parties that the claim is barred by California's statute of limitations."). Here, the 1AC contains no information from which the Court could conclude that GM had sufficient information to suspect that Ashton was directly tied to the wrongdoing at the CHR (until Grimes' indictment in 2019), much less that any wrongdoing impacted GM or was tied to the already-disclosed FCA bribery scheme. Taking Ashton's argument at face value, as soon as Ashton did ***anything*** inconsistent with his duties as a director (such as refusing an interview), GM would have notice of ***every*** claim they have against Ashton. This is inconsistent with Michigan law, which

7

permits a fraudulently concealed claim to be filed within two years of the date the claim is or should have been discovered.

Ashton's reliance on *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632 (2004) is misplaced. In that case, the plaintiff brought a claim against the Archdiocese of Detroit based on sexual abuse the plaintiff suffered at the hands of a Detroit priest. *Id*. at 644-45. The Michigan Supreme Court determined that the plaintiff could not state a claim for fraudulent concealment because at the time the abuse occurred, he knew that he had been abused, that the priest was employed by the Archdiocese, that the Archdiocese had held out the priest as a fit and able priest, and that the church grounds on which he was abused were owned by the Archdiocese. These facts, which under the circumstances of the case were apparent at the time of the abuse, were all that were required for the plaintiff in *Doe* to have a claim against the Archdiocese. The Michigan Supreme Court faulted the trial court for focusing on facts unknown to the plaintiff that would only be evidence supporting his claim rather than the existence of the claim itself. *Id*. at 647 (distinguishing between undisclosed facts that "[were] not required for plaintiff to be aware of his causes of action against defendant" but that were merely "evidence that could be used to prove plaintiff's claims"). Here, there is no allegation in the 1AC that suggests that GM had notice of its claim against Ashton for breaching his fiduciary duty to GM by engaging in fraud at the CHR or passing confidential

8

information to FCA until Grimes was indicted in August of 2019. (1AC at ¶ 102.) Unlike in *Doe*, these are not matters that would merely **be evidence** of a potential claim against Ashton; these go to the existence of the claims themselves. Ashton's attempt to focus on this single event, ignoring all surrounding context, cannot support dismissal of GM's claim. *N. Am. Comm'ns, Inc. v. InfoPrint Sols. Co., LLC*, 817 F. Supp. 2d 642, 650 (W.D. Pa. 2011) ("Generally, the granting of a motion to dismiss is not appropriate where the Plaintiff has pled fraudulent concealment and asserted its due diligence or reasons for the lack thereof."); *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 513-14 (Bankr. D.N.J. 1995) ("This determination [of when a plaintiff knew or should have known of its injury] cannot be made upon a motion to dismiss or a motion for summary judgment.").

### B. The 1AC Alleges Diligence by GM.

Ashton next argues that even if GM did not discover its claim until 2019, GM cannot avail itself of fraudulent concealment because the 1AC does not contain sufficient allegations of diligence. (Dkt. No. 21, at 25.) As an initial matter, this issue is again ill-suited for disposition at the motion to dismiss stage. A court should not rule on a diligence inquiry at the motion to dismiss stage unless there is **no evidence** of any diligence or investigation. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 448 (6th Cir. 2012) (citation omitted) ("Although we may dismiss a claim of fraudulent concealment when it is obvious from the complaint that the plaintiff

9

conducted absolutely no investigation, when there is some question as to the depth and scope of that investigation, a plaintiff should be allowed to proceed forward.").

The 1AC contains sufficient allegations of diligence and alleges sufficient investigation under the circumstances. First, GM sought to interview Ashton when it became aware of an investigation into the CHR (but long before it had any way of knowing the scope of the wrongdoing or Ashton's involvement in it). (1AC at ¶ 105.) The 1AC likewise explains that GM closely followed the ongoing criminal proceedings and other sources of available information concerning the investigation. (*Id*. at ¶ 108.) GM also reviewed its own internal communications and documents, engaged consulting experts, and performed in-depth reviews of the relevant CBAs. (*Id*. at ¶ 56.) In short, GM reviewed the available information but it was not until the Grimes indictment was released on August 14, 2019 that GM had sufficient information to determine that Ashton was involved in the ongoing wrongdoing.

Ashton takes issue with this diligence, claiming that GM did not sufficiently "follow up with him" regarding the watch scheme, or otherwise investigate the CHR or the watch vendors. (Dkt. No. 21 at 27.) This argument does not articulate why the allegations in the 1AC are insufficient to establish fraudulent concealment and also ignores what GM did and could reasonably be expected to do under the circumstances. GM *did* seek to interview Ashton, while he was on the GM Board, and he refused; Ashton does not explain why or how GM should then be required to

10

"follow up" with him. GM had no mechanism to compel Ashton to speak. Likewise, Ashton purports to fault GM for not investigating "the vendor of the watches," at a time when GM had no reason to believe that any specific CHR contract was the subject of fraud. (*Id*. at 27.) Ashton would apparently hold GM to the standard of investigating *all* of the various CHR contracts and transactions to condone the conduct of one of its Directors and satisfy the diligence standard. Ashton has not, and cannot, point to any authority suggesting that a "reasonable" inquiry in this context would require GM to effectively get ahead of federal investigators in identifying Ashton's breaches of fiduciary duty. *Best v. Park W. Galleries, Inc.*, 2013 WL 4766678, at *7 (Mich. App. Sept. 5, 2013) (denying motion to dismiss on fraudulent concealment because defendants "have cited no authority to justify a finding that reasonableness in this context would require" plaintiffs to take the steps identified by defendants).

Tellingly, Ashton does not identify *what* GM would have discovered through these steps. Ashton seems to assume that by investigating the watch vendor at issue (which GM had no reason to suspect), GM could have discovered that vendor's connection to Ashton or the inflated contract. But absent the ability to subpoena records related to the vendor or compel individuals to disclose the wrongdoing, even if GM had taken all the steps identified by Ashton, it *still* would not have uncovered its claim. It took federal prosecutors, with subpoena power and the threat of criminal

11

prosecution, until 2019 to bring charges arising out of the CHR scheme. It is unreasonable to suggest GM would have discovered the scheme sooner.

Courts in this district recognize that merely because a cause of action is discoverable through a government investigation, it does not follow that a private party should discover the claim. In *In re Liquid Aluminum Sulfate Antitrust Litig.*, Case No. 16-md-2687 (JLL), 2017 WL 3131977 (D.N.J. July 20, 2017), the court found that the plaintiff sufficiently pled fraudulent concealment to defeat a motion to dismiss. The court credited the plaintiff's allegation that it could not have discovered the defendant's "secret conspiracy" until the publication of a plea agreement detailing the wrongdoing. *Id*. at *17. The same is true here; despite GM's diligence, it could not have discovered its claim against Ashton at least until the government unsealed the Grimes indictment detailing the CHR-related fraud. This is not a case where GM "conducted absolutely no investigation" warranting dismissal under the 12(b)(6) standard. *Carrier Corp*, 673 F.3d at 448. The 1AC sufficiently pleads fraudulent concealment. If there is a question as to the depth and scope of the investigation conducted by GM to discover its breach of fiduciary duty claim, GM should be permitted to proceed past the motion to dismiss stage.

## C. The Complaint Alleges Acts of Concealment by Ashton.

Ashton finally asserts the 1AC does not contain sufficient allegations of concealment as against him because it alleges only "mere silence" by Ashton and

12

that the affirmative actions alleged in the 1AC were all done by "other actors." These arguments fail for several reasons.

***First***, Ashton ignores the affirmative acts of concealment ***by Ashton*** alleged in the 1AC. Ashton admitted in his plea agreement that he "concealed and did not disclose the manner in which certain contracts between CHR and [UAW Countrywide] . . . [were] obtained or the fact that [Ashton, Grimes, and Pietrzyk] accepted bribes and kickbacks from [USA Countrywide]." (1AC at ¶ 103.) In addition, Ashton took affirmative steps to set up a "sham vendor" to which the CHR would make payments and instructed that vendor to cease making kickbacks to him in an effort to avoid detection. (*Id*. at ¶ 104.) With respect to the FCA-bribery scheme, the 1AC likewise alleges specific actions taken by Ashton to fraudulently conceal his breach of fiduciary duty to GM. Specifically, Ashton set up accounts in foreign countries to disguise the payments he received and to ensure those payments were not discovered. (1AC at ¶ 107(a).) Ashton's claim that the 1AC does not contain allegations of affirmative acts of concealment by him is incorrect.

***Second***, Ashton incorrectly asserts that his admitted failure to disclose the existence of the schemes has no bearing on the fraudulent concealment allegations. Although mere silence is generally insufficient to establish fraudulent concealment, Michigan courts recognize an exception where a fiduciary duty exists and imposes a duty to disclose. Given Ashton's undisputed fiduciary duty to GM and the

13

accompanying duty to disclose, Ashton's silence ***does*** constitute fraudulent concealment. *Lumber Vill., Inc. v. Siegler*, 135 Mich. App. 685, 694 (1984) ("As a general rule, for fraudulent concealment to postpone the running of the period of limitation, the fraud must be manifested by an affirmative act or misrepresentation. ***An exception to this rule is that there is an affirmative duty to disclose where the parties are in a fiduciary relationship***.") (emphasis added, citations omitted). Ignoring this exception, Ashton makes the same error as the trial court in *Brownell v. Garber*, 199 Mich. App. 519 (1993). In *Brownell*, the trial court dismissed a malpractice claim as barred by the statute of limitations on the basis that the plaintiff did not establish fraudulent concealment because plaintiff "has not shown that defendant did anything to affirmatively conceal the discovery of the alleged wrongdoing." *Id*. at 527. The Court of Appeals reversed, recognizing that the trial court "overlooked an exception to the 'affirmative act' rule," namely that "there is an affirmative duty to disclose where the parties are in a fiduciary relationship." *Id*. Just as in *Brownell*, there is no doubt that Ashton owed GM a fiduciary duty, and therefore owed GM a duty to disclose the underlying schemes. Ashton's failure to disclose constitutes fraudulent concealment under Michigan law.

    ***Third***, well-established law requires affirmative actions of concealment by Ashton's co-conspirators be attributed to Ashton as well. *Intl. Union United Auto. Workers of Am.*, 337 Mich. at 18 ("Rather it is conclusively established that the four

14

worked for a common purpose and under such circumstances, the concealment of one must be charged to all."); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008) ("Fraudulent concealment, however, may be established through the acts of co-conspirators.").[1]  The 1AC contains detailed allegations of affirmative acts of concealment by Ashton's co-conspirators, including using charities or the NTC to disguise the source and amount of payments (1AC at ¶ 107(b)-(c)), filing false tax returns and impairing the IRS's ability to uncover the illegal payments (*id*. at ¶ 107(d)-(e)), and providing incomplete and misleading grand jury testimony (*id*. at ¶ 107(h)).   All of this is to say nothing of the myriad false public statements made by various UAW and FCA leaders to prevent the discovery of their ongoing schemes. (*Id*. at ¶ 109.) All of these allegations demonstrate the extensive steps that Ashton and his co-conspirators took to conceal their ongoing schemes.

## CONCLUSION

For the foregoing reasons, the Court should deny the remainder of Ashton's Motion to Dismiss as the breach of fiduciary duty claim is timely under Michigan or New Jersey law.

---

[1]  This rule is widely recognized in other courts.  *E.g.*, *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (collecting cases).

Dated: July 12, 2021

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: *s/James E. Marina*
James E. Marina (N.J. Bar No. 050791996)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
jmarina@kirkland.com

Hariklia Karis, P.C. (*admitted pro hac vice*)
Jeffrey Willian, P.C. (*admitted pro hac vice*)
Casey McGushin  (*admitted pro hac vice*)
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
hariklia.karis@kirkland.com
jeffrey.willian@kirkland.com
casey.mcgushin@kirkland.com

Austin Norris (*admitted pro hac vice*)
2049 Century Park East
Los Angeles, CA 90067
Telephone:  (310) 552-4200
austin.norris@kirkland.com

Maisie Allison (*admitted pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
Telephone:  (213) 680-8400
maisie.allison@kirkland.com

*Attorneys for Plaintiffs General Motors LLC and General Motors Company*