**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

**James E. Marina (N.J. Bar No. 050791996)**
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 466-4900
E-Mail: james.marina@kirkland.com

GENERAL MOTORS LLC, GENERAL MOTORS COMPANY,

Plaintiffs,

against

JOSEPH ASHTON,

Defendant.

Case No. 1:20-cv-12659-RBK-EAP

JUDGE ROBERT B. KUGLER
MAGISTRATE JUDGE ELIZABETH A. PASCAL

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NONPARTY LINDA KNOLL'S MOTION TO QUASH**

## TABLE OF CONTENTS


**FACTUAL BACKGROUND** .......... **2**

**ARGUMENT** .......... **4**

**CONCLUSION** .......... **8**

# TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*,
No. CV 13-1140 SRC, 2014 WL 7073466 (D.N.J. Dec. 15, 2014) .......... 5

*Buckhead Meat Co. v. AEBB of Greenwich Corp.*,
No. 2:14-CV-00477-DN, 2015 WL 2093292 (D.N.J. Feb. 10, 2022) .......... 5

*Lilac Dev. Grp., LLC v. Hess Corp.*,
No. 2:15-CV-07547 (WHW)(CLW), 2016 WL 3457012 (D.N.J. June 20, 2016) .......... 6

*Malibu Media, LLC v. Doe*,
No. CV 14-3945 MAS, 2015 WL 3795716 (D.N.J. June 18, 2015) .......... 6

*Malibu Media, LLC v. Doe*,
No. CV 15-1821 (AET), 2015 WL 7776895 (D.N.J. Dec. 2, 2015) .......... 4, 8

*Malibu Media, LLC v. John Does 1-15*,
No. CV 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) .......... 4

*Naftchi v. New York U. Med. Ctr.*,
172 F.R.D. (S.D.N.Y. 1997) .......... 7

*In re Rainwater*,
No. 1:18-MC-10051-EJL, 2018 WL 2088736 (D. Idaho May 4, 2018) .......... 7

*In re Schaefer*,
331 F.R.D. (W.D. Pa. 2019) .......... 5

*Schmulovich v. 1161 Rt. 9 LLC*,
No. CV 07-597 (FLW), 2007 WL 2362598 (D.N.J. Aug. 15, 2007) .......... 6

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-16593 (MAS), 2019 WL 4745360 (D.N.J. Sept. 30, 2019) .......... 5

*Zoobuh, Inc. v. Rainbow Int'l Corp.*,
No. CV1813399BRMLHG, 2020 WL 13580942 (D. Utah May 5, 2015) .......... 5

***Rules***

Fed. R. Civ. P. 45 .......... 5

Movant Linda Knoll's motion to quash GM's subpoena to AOL/Oath, Inc. for production of certain email subscriber information and metadata (and not the substance of actual emails) for one of Ms. Knoll's email addresses should be denied. This information is relevant to GM's claims against Mr. Ashton relating to his participation in a long-running bribery conspiracy between FCA and certain UAW executives, including through the use of foreign bank accounts. Ms. Knoll served as the Chief Human Resources Officer for FCA NV from 2011 until 2021, reporting directly to its CEO, Sergio Marchionne. She also sat on the Group Executive Counsel, the highest operational body within FCA, overseeing the entirety of FCA and FCA NV's human resources function, including organizational development, talent management, compensation and benefits, employee relations, and compliance and staffing. Accordingly, Ms. Knoll is likely to have communicated about compensation paid by FCA during its years-long scheme to bribe union officials and harm GM. Through its continued investigation and discovery, GM has reason to believe that Ms. Knoll used an AOL/Oath, Inc. email address (liknoll@aol.com) to communicate with a foreign bank connected to the scheme. GM served a subpoena on AOL/Oath Inc.—***not*** Ms. Knoll—seeking information related to that account, none of which would reveal the content of any of Ms. Knoll's communications.

Although service providers routinely produce such information, and AOL/Oath, Inc.'s production would impose zero burden on Ms. Knoll, she has moved to quash the subpoena on the grounds that GM is engaged in an "insidious effort" to "abuse" Ms. Knoll. Ms. Knoll omits that these same arguments have already been rejected by New York Justice Robert R. Reed. Ms. Knoll sued GM in New York, in response to similar subpoenas issued by GM to financial institutions. The New York court rejected Ms. Knoll's arguments and granted GM's motion to dismiss, holding it was "plain" that "GM had a justification for issuing the bank subpoenas." (*See* Dkt. No. 72,

*Knoll v. General Motors LLC*, No. 160509/2021 (N.Y. Sup. Ct.).) Ms. Knoll's arguments fail here, too.

Ms. Knoll fails to support her objection that GM's AOL/Oath, Inc. subpoena would subject her to "undue burden" under Rule 45. The Court should deny her motion.

## **FACTUAL BACKGROUND**

GM's claims in this case arise from Mr. Ashton's fraud and breaches of his fiduciary duties to GM. GM has alleged that Mr. Ashton was alleged in "two sprawling and long-running criminal schemes" to harm GM. (Dkt. No. 7, First Am. Compl. ("1AC") at ¶ 2.) First, Mr. Ashton pled guilty to taking illegal kickbacks extorted from vendors to the GM-funded UAW-GM Center for Human Resources ("CHR"). (*See id.* ¶ 3.) Second, Mr. Ashton was a key participant in a conspiracy through which FCA, FCA NV, and their co-conspirators paid certain UAW officials bribes in order to extract benefits and concessions for FCA in the collective bargaining process, as well as to harm GM. (*See id.* ¶ 4.)

This latter scheme was carried out over the course of a decade but was not publicly revealed until the U.S. Attorney's Office for the Eastern District of Michigan obtained a guilty plea from Alphons Iacobelli, along with dozens of other current and former FCA and UAW executives, in 2018. (*See* 1AC at ¶ 55.) As GM alleges in the First Amended Complaint, this bribery scheme was concealed in part by FCA and its co-conspirators' use of foreign bank accounts. (*See id.* ¶¶ 107(a) (alleging that FCA and UAW executives "hold millions of dollars in illicit funds in foreign bank accounts" connected with the scheme); ¶¶ 57-60 (describing use of offshore accounts by conspirators).) GM currently has a related lawsuit against other defendants pending in Michigan, which is also actively engaged in the discovery process. (*See General Motors LLC v. Iacobelli*, No. 20-011998-CB (Mich. Cir. Ct.) (the "Michigan Action").)

Ms. Knoll served as the Chief Human Resources Officer for FCA NV during the scheme (2011 to 2021). She reported directly to CEO Sergio Marchionne. And she oversaw FCA's compensation and benefits. GM therefore has reason to believe that Ms. Knoll communicated with others about compensation paid by FCA to its co-conspirators as well as the broader scheme to harm GM. Upon information and belief, the email address at issue (liknoll@aol.com) is associated with a foreign bank account in Switzerland that is connected with the scheme at issue in this matter.

Throughout the Motion, Ms. Knoll references bank subpoenas that GM issued for financial information pertaining to Knoll and others in connection with the Michigan Action. While hyperbolically arguing that those bank subpoenas are evidence of GM's supposed "insidious effort" and "pattern of abuse" to harass Ms. Knoll, *see* Mot. at 1-2, Ms. Knoll omits that she filed a lawsuit against GM in New York state court over the bank subpoenas, making many of the same arguments that she makes here about her supposed lack of involvement in the underlying events and GM's allegedly ulterior motives for issuing the subpoenas. These arguments failed. GM moved to dismiss Ms. Knoll's complaint challenging the bank subpoenas, explaining that GM had a proper purpose for issuing the subpoenas because they sought information relevant to GM's allegations of an illicit and widespread conspiracy through the use of foreign accounts.[1] (*See* Dkt. Nos. 15, 55, *Knoll v. General Motors LLC*, No. 160509/2021 (N.Y. Sup. Ct.) ("New York Action").)

[1] Knoll argues that the subpoena responses "establish that Ms. Knoll had no foreign bank accounts." (*See* Mot. at 1.) Not so. The bank subpoenas were issued to New York-based intermediary banks, seeking information about money that was transferred through those institutions, which would have only involved transfers in US dollars. The bank subpoenas did not involve foreign financial institutions themselves or transactions in foreign currencies.

The New York Court granted GM's motion to dismiss and determined that the bank subpoenas targeted information relevant to GM's claims. Specifically, the New York Court found that it was "plain" that "GM had a justification for issuing the bank subpoenas," *see* Exhibit A, New York Action Order, Dkt. No. 72, at 15:17-19, given that GM has alleged a:

> criminal investigation by the U.S. Attorney in the Eastern District of Michigan, who evidently [obtained guilty pleas] to conspiracy to pay off senior UAW officials. ***Thus, it only stands to reason that in the course of a civil action GM would seek discovery related to the actions of Fiat's chief human resources officer. . . .*** (*See* **Exhibit A**, 15:24-16:5 (emphasis added).)

The New York Court also dismissed Ms. Knoll's unsupported claims, repeated here, that GM issued the bank subpoenas to harass or embarrass her, finding that those allegations were implausibly pled and that GM's subpoenas were justified. (*See* Exhibit A, 15:15-17.)

The Subpoena here similarly seeks information that may shed light on the bribery scheme at issue in the First Amended Complaint. GM served the Subpoena on AOL/Oath, Inc. on January 9, 2023, seeking (1) subscriber and/or account information associated with the liknoll@aol.com email account and (2) header information (excluding subject line or any content) for associated email addresses (*i.e.*, metadata).[2] (*See* Mot. Ex. A, Subpoena.)

**<u>ARGUMENT</u>**

"The scope of discovery in federal litigation is broad. . . . [T]he relevancy standard is satisfied and discovery requests are to be granted if there is any possibility that the that the information may be relevant to the general subject matter of the action." *Malibu Media, LLC v. John Does 1-15*, No. CV 12-2077, 2012 WL 3089383, at *9 (E.D. Pa. July 30, 2012). "The scope of discovery available from a subpoenaed nonparty is the same as the general scope of civil

---

[2] While Ms. Knoll argues that GM should have provided her notice of the Subpoena, no such notice is required under Federal Rule of Civil Procedure 45 or applicable case law. Further, it is undisputable that Ms. Knoll did, in fact, receive notice of the Subpoena.

discovery under Rule 26." *In re Schaefer*, 331 F.R.D. 603, 607 (W.D. Pa. 2019). "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements [to quash] of [Fed. R. Civ. P. 45] are satisfied." *Malibu Media, LLC v. Doe*, No. CV 15-1821 (AET), 2015 WL 7776895, at *1 (D.N.J. Dec. 2, 2015). This is a "heavy burden." *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-16593 (MAS), 2019 WL 4745360, at *3 (D.N.J. Sept. 30, 2019).

The Federal Rules of Civil Procedure ("Federal Rules") require a Court to quash or modify a subpoena in only four circumstances: (i) the subpoena "fails to allow a reasonable time to comply"; (ii) the subpoena "requires a person to comply beyond the geographical limits specified in Rule 45(c)"; (iii) the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or (iv) the subpoena "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A); *see also Buckhead Meat Co. v. AEBB of Greenwich Corp.*, No. CV 19-16766 (KM), 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022). In her Motion, Ms. Knoll argues only that the fourth circumstance (*i.e.*, undue burden) applies. (*See* Mot. at 8.) Ms. Knoll also argues that the Court should quash the Subpoena because it seeks irrelevant information. (*See id.* at 7.) Both arguments fail.

Several courts have held that, as a third party to the subpoena, Ms. Knoll does not have standing to argue relevance or undue burden. When a subpoena is served on a different party than the one bringing the objection, "[e]ven where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden. Similarly, a party lacks standing to challenge the subpoena on overly broad and relevance grounds." *Zoobuh, Inc. v. Rainbow Int'l Corp.*, No. 2:14-CV-00477-DN, 2015 WL 2093292, at *2 (D. Utah May 5, 2015) (denying third party's motion to quash and collecting cases); *see also Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. CV 13-1140 SRC, 2014 WL 7073466, at *4

(D.N.J. Dec. 15, 2014) (finding that party should seek protective order rather than motion to quash).

Regardless, even if Ms. Knoll did have standing, the Subpoena imposes no burden whatsoever on Ms. Knoll because she is not the responding party. *See Lilac Dev. Grp., LLC v. Hess Corp.*, No. 2:15-CV-07547 (WHW)(CLW), 2016 WL 3457012, at *2 (D.N.J. June 20, 2016) ("Even if a defendant has standing generally to quash a subpoena, he still lacks standing to challenge a third-party subpoena based on undue burden because it is the third-party that faces the burden of production and not the defendant."); *Malibu Media, LLC v. Doe*, No. CV 14-3945 MAS, 2015 WL 3795716, at *3 (D.N.J. June 18, 2015) ("[I]t is the Internet Service Provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden."); *Schmulovich v. 1161 Rt. 9 LLC*, No. CV 07-597 (FLW), 2007 WL 2362598, at *4 (D.N.J. Aug. 15, 2007) (subpoena not burdensome because "any burden to produce would be borne by the financial institutions and not Defendants themselves").[3]

Ms. Knoll provides no evidence to the contrary. Instead, Ms. Knoll's argument appears to be that the Subpoena is "burdensome" because GM could obtain the same information from Defendant Ashton. (*See* Mot. at 8.) Again, this argument has no bearing on burden ***to the movant*** as she will not be responding to the Subpoena. Moreover, the Subpoena is not limited to communications with Mr. Ashton. Instead, it seeks subscriber information and metadata for the liknoll@aol.com account, which Mr. Ashton does not possess and cannot produce.

---

[3] There is further no undue burden on AOL/Oath, Inc., which will likely be able to generate the requested metadata information automatically through an electronic database. Notably, AOL/Oath, Inc. has not sought to quash or narrow the Subpoena and has not raised any burden concerns.

While Ms. Knoll attempts to recast the Subpoena as a broad "fishing expedition" for her confidential communications, that claim is belied by the narrow terms of the Subpoena. GM seeks only subscriber information and metadata associated with the liknoll@aol.com email account over the course of the FCA-UAW bribery conspiracy. (*See* Mot. Ex. A, Subpoena.)

Ms. Knoll's bare assertion that she was uninvolved in the scheme is not a basis to object to the Subpoena. GM is entitled to discovery that may bear on its claims, notwithstanding whether alleged conspirators deny knowledge. *See Naftchi v. New York U. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("Nor, in ordinary circumstances, does it matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking the discovery is entitled to test the asserted lack of knowledge."); *In re Rainwater*, No. 1:18-MC-10051-EJL, 2018 WL 2088736, at *2 n.5 (D. Idaho May 4, 2018) (noting that the witness's assertions that he had no knowledge did not require quashing a subpoena for relevant information because "[o]therwise, an individual could avoid being deposed simply by stating that he has no knowledge about the subject-matter of the at-issue litigation").[4]

Finally, Ms. Knoll has not explained how she will be harmed by AOL/Oath, Inc.'s response to this Subpoena. Ms. Knoll merely alleges that she was harmed by the separate set of bank subpoenas that GM issued in New York,[5] which are not at issue here and which the New York

---

[4] Ms. Knoll's affirmation also reflects an unduly narrow view of the information that is relevant to GM's claims in this matter. (*See* Mot., Affirmation of Linda Knoll.) Whether or not Ms. Knoll has communicated with Defendant Joseph Ashton, as explained above, the Subpoena seeks information more broadly related to the bribery conspiracy, its participants, and the foreign accounts used to perpetrate it.

[5] While Knoll vaguely refers to resulting from "GM's harassment campaign," *see* Mot. at 2, this supposed harm is the same harm that was alleged by Knoll in the New York Action, long before the current Subpoena was served in this matter. (*See* Dkt. No. 1, *Knoll v. General Motors LLC*, No. 160509/2021 (N.Y. Sup. Ct.).)

court already found were well-supported and not an abuse of process. (*See generally* Exhibit A.) Ms. Knoll cannot argue that the Subpoena invades her privacy, because "courts have consistently held that 'Internet subscribers do not have a reasonable expectation of privacy in their subscriber information. This is because the [I]nternet subscribers have already voluntarily conveyed their subscriber information—name, address and phone number—to their [I]nternet [S]ervice [P]rovider.'" *Malibu Media*, 2015 WL 7776895, at *3 (alterations in original). Further, GM agrees to treat the information produced under the Subpoena as subject to the Discovery Confidentiality Order already in place in this matter. (*See* Dkt. No. 61.) Ms. Knoll will therefore incur no harm as a result of AOL/Oath, Inc.'s response to the Subpoena.

## **CONCLUSION**

For these reasons, the Court should deny the Motion and permit AOL/Oath, Inc. to respond to GM's Subpoena.

Dated: March 20, 2023

*/s/ James E. Marina*

James E. Marina
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Email: james.marina@kirkland.com

*Attorney for Plaintiffs General Motors LLC and General Motors Company*