**KUBLANOVSKY LAW LLC**
**BY: EUGENE D. KUBLANOVSKY, ESQ.**
**NJ BAR NO.: 029992005**
**26 PARK STREET, SUITE 2178**
**MONTCLAIR, NJ 07042**
**(212) 729-4707**
**EUGENE@EDKLAW.COM**

*Attorneys for Nonparty Linda Knoll*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| GENERAL MOTORS LLC,<br>GENERAL MOTORS COMPANY,<br><br>Plaintiffs,<br><br>-against-<br><br>JOSEPH ASHTON,<br><br>Defendant. | Case No. 20-cv-12659 (RBK/EAP) |

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF NONPARTY**
**<u>LINDA KNOLL'S MOTION TO QUASH</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 4

I. LEGAL STANDARDS .......... 4

II. GM FAILS TO ESTABLISH RELEVANCE .......... 7

III. KNOLL HAS ESTABLISHED THAT THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE .......... 9

A. The Subpoena is Overly Broad and Not Particularized .......... 9

B. Need .......... 10

C. Annoyance, Embarrassment, and Oppression .......... 10

D. GM's Reliance on the New York Abuse of Process Action is Misplaced .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**_Page(s)_**

***Cases***

*Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*,
No. 13-1140 (SRC), 2014 WL 7073466 (D.N.J. Dec. 15, 2014) .......... 5, 6

*Chazanow v. Sussex Bank*,
No. 11-1094 (CCC), 2014 WL 2965697 (D.N.J. July 1, 2014).......... 7

*Conforti v. St. Joseph's Healthcare Sys., Inc.*,
No. 2:17-cv-00050 (CCC-CLW), 2019 WL 3847994 (D.N.J. Aug. 15, 2019) .......... 6

*Hashem v. Hunterdon Cnty.*,
No. 15-8585 (FLW) (DEA), 2017 WL 2215122 (D.N.J. May 18, 2017).......... 4, 5, 8

*In re Centrix Financial, LLC*,
No. 12-6471 (AET), 2012 WL 6625920 (D.N.J. Dec. 18, 2012) .......... 7

*Khosroabadi v. Mazgani Soc. Serv., Inc.*,
No. 17-644, 2018 WL 1858153 (C.D. Cal. March 1, 2018).......... 6

*Malibu Media, LLC v. Doe*,
No. 15-1742 (MCA) (LDW), 2015 WL 5996319 (D.N.J. Oct. 14, 2015).......... 5

*Malibu Media, LLC v. John Does 1-15*,
No. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) .......... 5

*Ramos v. Walmart, Inc.*,
No. 21-13827 (BRM) (AME), 2023 WL 2327208 (D.N.J. Mar. 2, 2023) .......... passim

*Staff4Jobs, LLC v. List Logistics, LLC*,
No. 18-13399 (BRM) (LHG), 2020 WL 13580942 (D.N.J. Oct. 19, 2020).......... passim

*US EEOC v. United Galaxy*,
No. 10-4987 (ES-CLW), 2011 WL 4072039 (D.N.J. Sept. 13, 2011) .......... 6

*Werner Deconstruction, LLC v. Siteworks Servs. NY, Inc.*,
No. 15-7682 (MLC), 2016 WL 11804774 (D.N.J. Aug. 1, 2016).......... 5, 6, 8, 12

*Zoobuh, Inc. v. Rainbow Int'l Corp.*,
No. 2:14-cv-00477-DN, 2015 WL 2093292 (D. Utah May 5, 2015) .......... 5

***Rules***

Fed. R. Civ. P. 26 .......... passim

Fed. R. Civ. P. 45 .......... 6

Nonparty Linda Knoll respectfully submits this reply memorandum of law in support of her motion to quash the subpoena *duces tecum* (the "Subpoena") issued by Plaintiffs General Motors LLC and General Motors Corporation (collectively "Plaintiffs" or "GM") to AOL/Oath, Inc., seeking her private account and email information.

## PRELIMINARY STATEMENT

GM fails to meet its burden of showing that the discovery sought in the Subpoena is relevant to this dispute between GM and Defendant Joseph Ashton. GM does not even try to explain how fourteen years of Ms. Knoll's private email information has any bearing on GM's case against Ashton. Ms. Knoll has never met Ashton and has never communicated with him, by email or otherwise. Affirmation of Linda Knoll dated February 27, 2023 (Dkt. No. 110-3) ("Knoll Aff.") ¶ 4. Ms. Knoll did not work at GM, where Ashton allegedly served on the board of directors. Moreover, Ms. Knoll was not involved in and had no knowledge of any of the activities alleged in the First Amended Complaint (the "FAC") against Ashton. Knoll Aff. ¶ 8. GM speculates that Ms. Knoll may have known about "compensation" because of her role at FCA NV, the parent company of the North American business at issue in this case; however, prior to 2019, the North American region had its own dedicated human resources function that reported to the Chief Executive Officer of the United States subsidiary, ***not to Ms. Knoll***. Knoll Aff. ¶ 2. Moreover, GM falsely suggests that Ms. Knoll could have had some involvement with the union issue during the period in question (2014 through 2017). In fact, she had no involvement at all in labor negotiations during these years. Knoll Aff. ¶ 5.

These facts are not disputed. Indeed, GM did not submit any affidavit seeking to contest these facts, which are all set forth in Ms. Knoll's Affirmation. GM nonetheless argues that "upon information and belief," Ms. Knoll's AOL email address "is associated with" a bank account located in Switzerland. Putting aside the meaningless nature of that statement, such a flimsy and

conclusory allegation, which is directly contradicted by Ms. Knoll's Affirmation, cannot support the blunderbuss Subpoena issued by GM. Notably, GM does not allege that Ashton is in any way connected to the phantom bank account supposedly "associated with" Ms. Knoll, or even that he had a bank account in in Switzerland. Nor does GM offer a single fact connecting such an account (if it existed) to the alleged scheme by Ashton. This is all consistent with the fact that Ms. Knoll is not even mentioned in the FAC.

GM's Subpoena does not pass muster under the well-established standards for Rule 45 subpoenas. First, GM has failed to meet the heightened standards for relevance that applies to nonparty subpoenas. GM seeks to identify every person with whom Ms. Knoll communicated from 2009 to the present, regardless of whether such communications relate to Ashton (or FCA). The time frame is wildly overbroad; indeed, the allegations against Ashton are based on his role as a GM board member during the period from August 2014 through December 2017. The Subpoena also is completely unlimited as to scope and subject matter. GM's request for subscriber information, Ms. Knoll's IP addresses, and other metadata is obviously unrelated to any issue in this case.

Second, the Subpoena does not seek particularized information. The Subpoena does not even attempt to exclude personal information or to narrowly tailor the Subpoena to the needs of the case. Neither Ashton nor the Swiss bank is even mentioned. If GM were truly interested in obtaining information concerning the supposed Swiss bank account, they would have interposed limited requests for documents relating to that account.

Third, GM has not demonstrated a need for documents from Ms. Knoll. Any documents concerning her supposed role in Ashton's alleged breach of duty or fraud is available from Ashton (or FCA in the Michigan State case, where her business emails have been produced). GM does

not even tie its (false) allegation that Ms. Knoll had communications with a foreign bank using her AOL account to GM's claims regarding Ashton's alleged breach of his fiduciary duties to GM.

Finally, given GM's flimsy arguments and the failure to connect the information sought in this Subpoena to the allegations of the FAC, it is clear that this Subpoena is part of GM's continuing effort to harass Ms. Knoll and/or obtain discovery in the Michigan state court case against FCA. GM has been harassing Ms. Knoll with unwarranted subpoenas for years. Beginning with defamatory and false allegations against Ms. Knoll in the Michigan state court complaint, which as GM anticipated, was promptly picked up by the press, GM has been on a focused campaign to smear Ms. Knoll's reputation in an effort to get her to turn on FCA, even though she has repeatedly advised GM that she has no knowledge of any of the alleged schemes in question. GM served New York subpoenas on eleven banks knowing full well that the banks would immediately pick up on the press articles regarding Ms. Knoll, who is not even a party to any litigation with GM. They, of course, did, leading one bank to take adverse action against Ms. Knoll. Not surprisingly, the discovery produced pursuant to the subpoenas GM issued to those banks establish that Ms. Knoll did not have any foreign bank accounts.[1] In addition, the parties have produced documents in this case and in the Michigan state court case against FCA, but GM comes forward with not a single communication linking Ms. Knoll to Ashton or the matters at issue in this case. And of course, GM admits that they have not even served a Subpoena on Ms. Knoll, instead focusing on falsely insinuating to third parties that Ms. Knoll was somehow involved in a criminal scheme.

---

[1] GM now claims that the subpoenas they issued apparently did not cover transactions in foreign currencies, suggesting that Ms. Knoll not only had a bank account in Switzerland but that it was funded with foreign currency. This is preposterous and again directly contradicted by Ms. Knoll's Affirmation, which GM fails to rebut with evidence.

It is clear GM thought it could get its hands on the AOL documents before Ms. Knoll learned the Subpoena had even been served. As noted in Ms. Knoll's Motion to Quash (Dkt. No. 110, "Knoll Motion"), GM engaged in these very same tactics in serving Subpoenas on eleven banks without any notice to Ms. Knoll. It is also clear that GM's underhanded effort is part of a continuing strategy to harass and embarrass Ms. Knoll; GM knows full well the serious reputational harm that Knoll has suffered from these baseless attacks. GM has been chasing ghosts based on pure speculation—at great cost to Ms. Knoll.

Ms. Knoll respectfully submits that the Subpoena should be quashed. In the alternative, the Subpoena should be modified to seek only communications with Ashton or with the Swiss bank with which GM alleges that Ms. Knoll communicated.

## <u>ARGUMENT</u>

### I. LEGAL STANDARDS

GM ignores the well-established burden shifting test applied by New Jersey federal courts in addressing motions to quash. *Staff4Jobs, LLC v. List Logistics, LLC*, No. 18-13399 (BRM) (LHG), 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020). Once an objection is made to a non-party subpoena, the party seeking discovery bears the initial burden of establishing relevance and compliance with Fed. R. Civ. P. 26(b). *Id.*; *see Ramos v. Walmart, Inc.*, No. 21-13827 (BRM) (AME), 2023 WL 2327208, at *2 (D.N.J. Mar. 2, 2023) (party seeking discovery bears the burden to establish its relevance and compliance with Rule 26(b)); *Hashem v. Hunterdon Cnty.*, No. 15-8585 (FLW) (DEA), 2017 WL 2215122, at *2 (D.N.J. May 18, 2017) (subpoenaing party bears the burden of showing relevance). The party seeking discovery is required to show that the

discovery sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b).[2] If the subpoenaing party establishes the relevance of the documents sought (in whole or in part), then the burden shifts to the party seeking to quash a subpoena to establish that it is unreasonable, oppressive, overbroad, or lacks particularity, among other factors. *Staff4Jobs*, 2020 WL 13580942, at *3; *Ramos*, 2023 WL 2327208, at *2; *see* Knoll Motion at 7.

GM misleadingly suggests that the court cannot impose any limits on the Subpoena because Ms. Knoll lacks standing to move to quash or modify, relying on a case from the District of Utah and a 2014 decision merely reciting the general rule that a motion to quash or modify a subpoena is generally brought by the person to whom it is directed. *See* Opp. at 5-6 (citing *Zoobuh, Inc. v. Rainbow Int'l Corp.*, No. 2:14-cv-00477-DN, 2015 WL 2093292, at *2 (D. Utah May 5, 2015); *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140 (SRC), 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014)). GM's standing argument is directly contrary to numerous cases holding this this general principal does not bar a person with a personal right or interest in the documents sought from challenging a subpoena. *Ramos*, 2023 WL 2327208, at *3 (personal interest in employment records); *Werner Deconstruction, LLC*, 2016 WL 11804774, at *4 (interest in bank records); *Malibu Media, LLC v. Doe*, No. 15-1742 (MCA) (LDW), 2015 WL 5996319, at *2 (D.N.J. Oct. 14, 2015) (interest in Internet identification information).

[2] GM's argument regarding the breadth of discovery allowed under the Federal Rules (Opp. at 4) relies on *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *9 (E.D. Pa. July 30, 2012), an Eastern District of Pennsylvania case that was decided prior to the 2015 Amendment to Rule 26, which limited permissible discovery to "matters relevant to any party's claim or defense and proportional to the needs of the case . . . ." *See* Fed. R. Civ. P. 26 Advisory Committee Notes (2015); *see also Werner Deconstruction, LLC v. Siteworks Servs. NY, Inc.*, No. 15-7682 (MLC), 2016 WL 11804774, at *6 (D.N.J. Aug. 1, 2016) ("Rule 26(b)(1) was amended in 2000 and again in 2015 to make clear that it is no longer sufficient for discovery to be relevant to the general subject matter of a case."); *Hashem*, 2017 WL 2215122, at *3 ("[T]he mere possibility that [d]efendants may discover [potentially relevant or impeachment] evidence does not justify a wide-ranging fishing expedition. . . .").

Moreover, GM's standing argument elevates from over substance. Ms. Knoll clearly has standing to seek to quash or modify the subpoena under Rule 26(c), and, if necessary to resolve a challenge to a subpoena, courts will construe a motion to quash as a motion for a protective order under Rule 26(c). *See Ramos*, 2023 WL 2327208, at *3 n.3 ("to the extent necessary to resolve this dispute, the Court construes Plaintiffs' motion to quash as also seeking a protective order liming the specific third party discovery at issue"); *Staff4Jobs*, 2020 WL 13580942, at *3 (construing a motion to quash nonparty subpoena as motion for protective order); *see also Werner Deconstruction, LLC*, 2016 WL 11804774, at *4 (granting a party's motion to quash nonparty subpoenas and finding that party moving to quash had "standing to challenge the non-bank subpoenas on relevance grounds"); *Aetrex Worldwide,* 2014 WL 7073466, at *4 (standing under Rule 26 to enjoin production of irrelevant information sought in non-party subpoena).

In all events, the Court has considerable discretion in determining the appropriate scope of discovery and may quash an oppressive or unreasonable subpoena *sua sponte*. *Staff4Jobs,* 2020 WL 13580942, at *3 (citing *Khosroabadi v. Mazgani Soc. Serv., Inc.*, No. 17-644, 2018 WL 1858153, at *3 (C.D. Cal. March 1, 2018)); *Werner Deconstruction, LLC*, 2016 WL 11804774, at *4. GM's Subpoena is required to comply with Rules 45 and 26, and if it does not the Court can exercise its inherent authority to ensure that subpoenas are not oppressive or unreasonable. *Werner Deconstruction, LLC*, 2016 WL 11804774 at *4; *see US EEOC v. United Galaxy*, No. 10-4987 (ES-CLW), 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011).

Finally, GM also ignores the general principal that a heightened standard applies to nonparty subpoenas issued under Rule 45. "Generally, courts afford greater protection to non-parties in discovery, and nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti v. St. Joseph's Healthcare Sys., Inc.*,

No. 2:17-cv-00050 (CCC-CLW), 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019); *see* Chazanow *v. Sussex Bank*, No. 11-1094 (CCC), 2014 WL 2965697, at *3 (D.N.J. July 1, 2014) (nonparties are "afforded greater protection from discovery than a normal party."); *In re Centrix Financial, LLC*, No. 12-6471 (AET), 2012 WL 6625920, at *6 (D.N.J. Dec. 18, 2012) (same); *see also Staff4Jobs*, 2020 WL 13580942, at *3 (nonparty subpoenas must meet a higher standard of relevance).

## II. GM FAILS TO ESTABLISH RELEVANCE

GM fails to meet its burden of establishing that the documents sought in the Subpoena are relevant to this action. Indeed, GM never explains how information from Ms. Knoll's AOL account could possibly be relevant to any of the claims or defenses in the FAC, which does not even mention Ms. Knoll. Ms. Knoll's subscriber information certainly has no bearing on any issue in this case. GM's extremely broad request for identification of every person that Ms. Knoll communicated with during a fourteen-year period obviously is not designed to capture only relevant information. The Subpoena does not even mention Ashton, the only defendant in this case. Since this is a personal email account, not a business account, most or all of these communications will have nothing to do with FCA, and GM offers no evidence to contradict Ms. Knoll's sworn statement that she has never communicated with Ashton.

GM argues that Ms. Knoll's Affirmation "reflects an unduly narrow view of relevance", but then fails to explain what facts and circumstances could lead to a conclusion that the information sought by the Subpoena is relevant. Indeed, GM's rank speculation that Ms. Knoll was involved in communications with others involving "compensation" – an allegation refuted by Ms. Knoll's Affirmation – does not establish any connection to Ashton or the alleged schemes he

supposedly perpetrated.[3] GM's factual predicate is not even correct. GM suggests that Ms. Knoll was the supervisor of human resources for the North American Region and therefore was involved with "compensation" in connection with the scheme alleged by GM. As Ms. Knoll explains in her Affirmation, prior to 2019, her responsibilities were at the global level, and the human resources function for the North American Region reported directly to the CEO of the United States subsidiary and did not report to her. Knoll Aff. ¶ 2. As such, she had no involvement in any compensation matters in the North American Region. GM submits no evidence to the contrary.

Nor does GM's speculation that Ms. Knoll's email account allegedly had "connections" with a Swiss bank demonstrate relevance to any claim or defense in this case. Ms. Knoll's Affirmation specifically denies that she has ever had a bank account in Switzerland, and GM does not submit an affidavit or any evidence suggesting that her statement is wrong.

GM's justification for the Subpoena is based entirely on unfounded speculation, without any factual basis. GM's baseless suspicion that Ms. Knoll was involved with the schemes allegedly perpetrated by Ashton is not enough. Mere speculation is "an insufficient basis to bring the subpoenaed information within the ambit of Rule 26(b)." *Ramos*, 2023 WL 2327208, at *5. "[T]he mere possibility that [GM] may discover [potentially relevant or impeachment] evidence does not justify a wide-ranging fishing expedition. . . ." *Hashem*, 2017 WL 2215122, at *3. Moreover, GM's general allegations of wrongdoing are also insufficient; the information sought must be relevant to a party's claims or defenses. *Werner Deconstruction, LLC*, 2016 WL 11804774, at *6.

[3] Ms. Knoll was not involved in compensation issues relating to the North American Region. Knoll Aff. ¶ 2,5. In any event this argument relates to illicit payments supposedly paid to union officials and Ashton, not compensation of FCA employees.

GM's fails to carry its burden to show that its blanket requests for Ms. Knoll's personal information (which have no apparent nexus to any claims or defenses in the FAC) seek relevant information. *See Ramos*, 2023 WL 2327208, at *5-6 (rejecting blanket requests for plaintiffs' employment files from prior employers); *Staff4Jobs*, 2020 WL 13580942, at *4 (rejecting blanket request seeking files pertaining to a seven-year old lawsuit). In addition, the fourteen-year time frame, which far exceeds the period at issue in this case, and GM's failure to even mention Ashton in any of the requests in the Subpoena undermines GM's assertion that the Subpoena seeks relevant information. *See Staff4Jobs*, 2020 WL 13580942, at *3.

## III. KNOLL HAS ESTABLISHED THAT THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE

### A. The Subpoena is Overly Broad and Not Particularized

The Subpoena never mentions Ashton. The Subpoena never mentions the name of the Swiss bank that supposedly holds the phantom account. GM does not even limit the time frame of the Subpoena to the years at issue in this case – 2014 through 2017, the years that Ashton served on GM's board of directors.[4] GM's only response is a conclusory sentence referring to the supposedly "narrow terms of the Subpoena." Opp. at 7. That tepid response is a tacit concession that the Subpoena is anything but particularized.

Indeed, GM mischaracterizes the scope of the Subpoena, claiming that it is only seeking "metadata" and "subscriber" information. The Subpoena broadly seeks identification of every person appearing in the "to/from" fields of Ms. Knoll's emails over a fourteen-year period, session times for Ms. Knoll's use of her AOL account, IP addresses identifying each time she logged in over a fourteen-year period, other persons associated with the account, screen names, and

[4] GM falsely suggests that the so-called scheme at issue was from "2011 to 2021." Opp. at 3. However, as alleged in GM's own FAC, Ashton joined GM's board of directors in August 2014 and resigned from GM's board of directors in December 2017. Any supposed scheme perpetrated by Ashton thus ended in 2017.

telephone addresses. GM identifies no specific individuals, no defined subject matters, and no other characteristics that would ensure that the Subpoena retrieves information relating only to this case. As in *Ramos*, "the requests' blanket nature and the lack of close nexus to the issues in this case call into question the lack of proportionality of the discovery demands under Rule 26(b)." *Ramos*, 2023 WL 2327208, at *7.

B. Need

The FAC asserts breach of fiduciary duty, fraud, and fraud by omission claims against Ashton arising out of his actions while he was a member of GM's board of directors. Ms. Knoll never worked for GM and did not know Ashton. Ms. Knoll has affirmed that she had no contact with Ashton and no involvement in (or knowledge of) any scheme he may have perpetrated. Knoll Aff. ¶ 4. GM can obtain—and presumably already has obtained—information relevant to its claims from its own email servers as well as from Ashton and others supposedly involved with his alleged scheme. It has no need to bother Ms. Knoll.

GM argues that Ashton does not have the metadata and subscriber information for Ms. Knoll's Yahoo account, but that information has no bearing on the issues in this case.

C. Annoyance, Embarrassment, and Oppression

Despite knowing full well the harm it has inflicted on Ms. Knoll as a result of defamatory comments both in the Michigan state complaint and in open court in Michigan, the press reports regarding Ms. Knoll based on false insinuations made by GM, and the service of subpoenas on eleven banks without even giving notice to Ms. Knoll, GM continues to seek to embarrass and harass Knoll by serving subpoenas on Ms. Knoll's Internet service provider. Indeed, it may be that GM has served subpoenas on Ms. Knoll's other Internet services providers without her knowledge. The fact that GM continues to pursue Ms. Knoll, even after she has submitted an Affirmation under penalty of perjury making clear that she had no involvement with Ashton or

any of the claims in this case undermines GM's contention that the Subpoena was served solely for purposes of obtaining discovery in this case. GM's inability to submit a single communication or document tying Ms. Knoll to this case points up the abusive nature of what GM is doing to Ms. Knoll.

Ms. Knoll has already suffered annoyance and embarrassment as a direct result of GM's aggressive tactics. This Subpoena, and others possibly served without Ms. Knoll's knowledge, continues GM's campaign of harassment against Ms. Knoll, and threatens to further damage her reputation.

D. GM's Reliance on the New York Abuse of Process Action is Misplaced

GM's reliance on the decision issued in the New York action is misplaced. *See* Op. 1, 3 (citing *Knoll v. General Motors LLC*, No. 160509/2021 (N.Y. Sup. Ct), Dkt. No. 72). GM issued the eleven bank subpoenas at issue in that case out of the Michigan state case, which references Ms. Knoll in two paragraphs of a 202-paragraph complaint (but does not name her as a party). As here, GM did not subpoena Ms. Knoll and did not give any notice to Ms. Knoll of the subpoenas. Some or all of the banks (that had any responsive documents) had already produced documents by the time Ms. Knoll learned of the subpoenas. In an effort to prevent further harm to her reputation arising from GM's false and defamatory statements about her, and in light of the actions taken by one bank to cancel her credit cards based on GM's false insinuations, Ms. Knoll filed an abuse of process claim against GM. The court was not ruling on a motion to quash made before documents were produced, but instead was ruling on Ms. Knoll's efforts to protect her reputation. The Court dismissed the abuse of process action based on New York's high standards for such a claim, which are completely different than the standards applicable on a motion to quash under Rule 45 or Rule 26.

It is likely that GM thought that AOL would produce Ms. Knoll's personal documents before Ms. Knoll learned of the Subpoena. Unlike in the New York case however, Yahoo (the current owner of AOL) gave Ms. Knoll notice and has agreed not to produce any documents until this motion is resolved. In addition, the AOL Subpoena is issued out of this case, not the Michigan state court case against FCA. The FAC in this case does not mention Ms. Knoll and alleges no facts that involve Ms. Knoll. GM's reliance on the New York decision plainly shows that what GM is really doing is seeking discovery in aid of its Michigan case, not discovery that has anything to do with GM's claims against Ashton. *See Werner Deconstruction, LLC*, 2016 WL 11804774, at *6 (discussing the difference between discovery that looks only for the general subject matter of the case and discovery that is actually tied to a party's claims).

The Court's ruling in the New York case thus has no bearing on whether the factors to quash a subpoena before documents are produced were met by GM in this case.

## CONCLUSION

For the foregoing reasons, the Court should issue an order quashing the Subpoena. In the alternative, the Subpoena should be modified to seek only communications with Ashton or with the Swiss bank with which GM alleges that Knoll communicated.

Dated: March 27, 2023
Montclair, NJ

KUBLANOVSKY LAW LLC

By: ______________________
Eugene D. Kublanovsky
NJ Attorney No.: 029992005
26 Park Street, Suite 2178
Montclair, NJ 07042
Tel: (212) 729-4707
Email: eugene@edklaw.com

KAPLAN RICE LLP
Howard J. Kaplan, Esq.
(*pro hac vice* forthcoming)
Winhkong L. Hua, Esq.
(*pro hac vice* forthcoming)
142 West 57th Street, Suite 4A
New York, NY 10019
Tel: (212) 333-0219
Email: hkaplan@kaplanrice.com
vhua@kaplanrice.com

*Attorneys for Nonparty Linda Knoll*